NATHANIEL H. EMMONS & another, executors, *vs.* JANE F. DOW & others.

Suffolk.   January 22, 1906. — March 5, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & SHELDON, JJ.

*Devise and Legacy.*

A testatrix gave by her will a house and land worth $15,000 and $50,000 in money or securities, in trust for the benefit of her two sisters during their lives and on the death of the survivor of them to "pay out of the trust fund" certain legacies to persons and institutions amounting in all to $59,000. By a codicil the testatrix directed that the house and land included in the trust after the decease of her two sisters should be sold and the proceeds equally divided between two cousins of the testatrix named. The codicil then provided as follows: "Should it so happen, that after paying all expenses and dues, and delivering sundry gifts of my private personal effects, there should not be sufficient money left from the saleable portions of my estate, to pay the full amount of the sums given and bequeathed to sundry persons and Institutions, as enumerated in my Will and Codicil, then my will is, that said recipients shall each receive a *pro rata* as will

equalize the distribution of the Amounts." The will contained a residuary clause. After paying debts and legacies including the $50,000 for the trust above named the executors had in their hands about $20,000, and brought a bill for instructions as to whether the whole of this should be distributed to the residuary legatees or whether they should retain in their hands a sufficient amount to pay with the $50,000 in the trust the $59,000 of legacies payable upon the death of the testatrix's two sisters. *Held,* that the testatrix by the provision in her codicil intended to place all of the legatees under the will and codicil, except those to whom specific legacies were given, upon an equal footing, and the executors were ordered to retain out of the funds in their hands a sufficient sum to pay in full the deferred legacies when they became payable.

BILL IN EQUITY, filed in the Supreme Judicial Court on May 19, 1905, by the executors under the will of Maria W. Wales, late of Boston, for instructions.

The case came on to be heard before *Morton,* J., who at the request of the parties reserved it upon the bill and answers for determination by the full court, such decree to be entered as justice and equity might require.

The will of Maria W. Wales was dated June 13, 1898, and contained eight articles providing substantially as follows:

First. She named the plaintiffs as her executors.

Second. She gave eleven pecuniary legacies of the aggregate amount of $10,100.

Third. She gave certain legacies of chattels.

Fourth. She gave the residue of her personal chattels to three persons with a request to distribute them in accordance with any memorandum in writing that she might leave.

Fifth. She gave to her executors a house and land in Milton and $50,000 in money or securities, as they might determine, in trust, to permit her two sisters to occupy the premises during their joint lives and the life of the survivor rent free, with power to sell or rent with the consent of the life tenants or life tenant, and on the further trust to pay the net income of the trust property to the testatrix's two sisters and the survivor for life, and on the death of the survivor to "pay out of said trust fund the following legacies, namely: " fourteen legacies of the aggregate amount of $59,300, of which one was a legacy of $20,000 to the Museum of Fine Arts in Boston, one a legacy of $10,000 to the Perkins Institution and Massachusetts School for the Blind, one a legacy of $10,000 to the President and Fellows of Harvard College, one a legacy of $1,000 to the Home for Aged Colored

Women in Boston, one a legacy of $1,000 to the Children's Hospital in Boston, and the others legacies to various persons, and to " transfer, pay over, and convey the whole residue of the said trust estate, to the persons entitled to the residue of my estate under the following article in fee."

Sixth. She gave all the residue of her estate, " including the remainder and reversion of the residue of the trust estate," to her husband's nephews and niece, naming them, the issue of any deceased to take by right of representation, and lapsed shares to go to the survivors.

Seventh. She gave the trustees power of sale and investment, except that the Milton property should not be sold without the consent in writing of the life tenants or the survivor.

Eighth. She provided that all legacy taxes under St. 1891, c. 425, or amendatory acts, should be paid from the residue.

By a codicil, dated April 26, 1900, the testatrix gave each of her sisters $1,000, gave other pecuniary legacies amounting to $3,000, and then provided:

" After the decease of my two sisters, the house in Milton is to be sold; and I give the proceeds of said house to be equally divided between my two cousins, Ella F. Sizer and Charles F. Knapp, now residing in Kearney, Nebraska.

" Should it so happen, that after paying all expenses and dues, and delivering sundry gifts of my private personal effects, there should not be sufficient money left from the saleable portions of my estate, to pay the full amount of the sums given and bequeathed to sundry persons and Institutions, as enumerated in my Will and Codicil, then my will is, that said recipients shall each receive a *pro rata* as will equalize the distribution of the Amounts."

The real estate devised in trust was when the will was made and at the time of the filing of the bill worth about $15,000. After the payment of all debts and legacies, including the payment of $50,000 to themselves as trustees, the executors had in their hands securities to the amount of $20,000. This bill was brought to determine whether the executors should retain from the residue in their hands funds sufficient to provide for the payment in full of the legacies payable at the death of the life tenants, both of whom were living when the bill was filed.

*F. Brewster*, for the executors, stated the case.

*W. H. Dunbar*, for the Museum of Fine Arts and others, postponed legatees under article fifth of the will, contended that a sum should be reserved sufficient with the fund of $50,000 to make up the full amount of the legacies payable under that article on the death of the sisters of the testatrix.

*Roland Gray*, for the Perkins Institution and Massachusetts School for the Blind, the President and Fellows of Harvard College and others, also postponed legatees under article fifth of the will, made the same contention.

*A. D. Hill, (F. W. Hunnewell 2d* with him,) for Thomas B. Wales and others, residuary legatees and devisees under the will, contended that the whole of the fund in the hands of the plaintiffs should be distributed immediately among the residuary legatees, leaving for the postponed legatees under article fifth of the will only the trust fund created by that article whether sufficient to pay them in full or not.

MORTON, J. By the second clause of her will the testatrix gives certain pecuniary legacies; then she makes provision for various specific bequests of articles of personal property including jewelry, pictures, books, etc., and by the fifth clause gives the trustees $50,000 and certain real estate in trust to pay to her sisters the net income for life, and upon the death of the survivor to pay out of the trust fund " the following legacies," naming them; concluding the clause with a direction to the trustees to " transfer, pay over and convey the whole residue of said trust estate to the persons entitled to the residue of my estate under the following article in fee." " The following article " is the residuary clause, which gives " all the rest, residue and remainder of my estate both real and personal including the remainder and reversion of the trust estate created by the Fifth Article of this will " to certain persons therein named with provisions for the succession in case of the death of any of them. This was in substance the way the will disposed of the estate at the time when the codicil was executed. The legacies given by the fifth clause out of the trust estate amounted to $59,000. The trust estate, including the real estate, which was and is valued at about $15,000, amounted to $65,000. There would, therefore, except for some unforeseen contingency, have

been sufficient to pay all of the legacies thus given, and to leave a residue. And the testatrix must be presumed to have understood and appreciated these facts. By the codicil, however, material alterations were made in the will, and the scheme of it was, as we think, radically changed. By it the testatrix gave additional pecuniary legacies, and directed that the real estate included in the trust should be sold after the death of her sisters and the proceeds divided equally between two cousins. This, as the testatrix must have known, rendered the trust estate insufficient to meet the legacies that were to be paid out of it, and no doubt directed her attention to the possible abatement of the other legacies when the legacies given by the codicil were added to them. This, it seems to us, is the explanation of the presence in the codicil of the provision as to a *pro rata* payment "of the sums given and bequeathed to sundry persons and institutions as enumerated in my will and codicil" if "there should not be sufficient money left from the saleable portions of my estate to pay the full amounts of the sums" so given and bequeathed. And the natural construction of the provision is, we think, that the testatrix intended thereby to place all of the legatees, except those to whom specific bequests were made, as well those to whom legacies were given out of the trust fund as those who were not, upon an equal footing, and that they should all be paid in full if there was enough of the estate to pay them, "after paying all expenses and dues, and delivering sundry gifts of my private personal effects," and if not that they should all abate *pro rata.* She expressly includes "the sums given and bequeathed to sundry persons and Institutions, as enumerated in my Will and Codicil," and nowhere manifests any intention to draw any distinction between the legacies that were made payable out of the trust estate and those that were not. The testatrix did not work out her scheme in all its details, but her intention is, we think, reasonably plain. Whether, as the will stood before the execution of the codicil, in case of a loss in whole or in part of the trust fund, the legacies payable out of it would have abated altogether or in part, as the case might be, as the counsel for the residuary legatees contends, or whether the loss would have had to be made up out of the rest of the estate, as the counsel for the legatees under the fifth clause contends, it is not necessary to

consider, in view of the construction which we think must be given to the provision in the codicil relating to *pro rata* payments.   The result is that the executors should retain out of the funds in their hands sufficient funds to pay in full the legacies under the fifth clause when and as they become due.   The question as to what disposition should be made of the interest if any that may come due or accumulate and of any surplus that may remain is not strictly speaking before us, though we may perhaps not improperly observe that we do not see why both would not go to the residuary legatees.

*Ordered accordingly.*